UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LERAJJAREANRA-O-KEL-LY,<br><br>                Plaintiff,<br><br>    v.<br><br>JEFFREY ZMUDA; PAM SONNEN; DEBBIE WEEDON; LORI BRISBIN; JAMES LOUCK; KEVIN BUTLER; JOHN HARDISON; MICHAEL JOHNSON; KEITH YORDY; JOHANNA SMITH; JEFFREY HENRY; RODNEY SCHLIENZ; ALAN LEE; TIMOTHY RICHARDSON; SARAH LINK; GARTH LYONS; JAY CHRISTENSEN; DAVID VEHLING; BRENT REINKE; TODD MARTIN; KIMBERLY JONES; L. YOUNG; MARK AIELLO; VERNON GREENLAND; LARISSA PFIEFER; RANDY BLADES; SHANNON NICHOLS; VICKY HANSEN; JIMMIE CROSBY; SGT. OVERGAARD; PSYCH. TECH. HEINRICH; and JOHN AND JANE DOES 1-20, employees of the State of Idaho Board of Correction and Idaho Department of Correction;<br><br>                Defendants. | Case No. 1:10-cv-263-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Defendants' Partial Motion to Dismiss (Dkt. 61), Defendants' Motion for Summary Judgment (Dkt. 62), and Plaintiffs' Motion in Opposition to Defendants' Motion for Summary Judgment (Dkt. 70). All parties have

**MEMORANDUM DECISION AND ORDER - 1**

consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 74.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding delay, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

**1.     Background**

In 2006, Plaintiff was designated as a PREA (Prison Rape Elimination Act) inmate. Prison officials justified this label because they had two reports that Plaintiff had sexually assaulted other inmates, and because Plaintiff appeared to be grooming young inmates (for example, ages 18, 19, and 20) for sexual relationships or abuse. As a result, Plaintiff was placed in administrative segregation until his release in 2011, despite Plaintiff's allegations that the PREA designation was based upon false information. While in segregation, Plaintiff complained that his cell was too cold from time to time.

After initial review of the Complaint, Plaintiff was permitted to proceed on the following claims: (1) that Defendants violated Plaintiff's First Amendment rights when they acted out of retaliation for Plaintiff's jailhouse lawyer activities when they refused to remove his predator points, remove his PREA designation, or release him from ad-seg; (2) that Defendants violated Plaintiff's Fourteenth Amendment due process rights when

**MEMORANDUM DECISION AND ORDER - 2**

they refused to remove his predator points, remove his PREA designation, give him meaningful housing reviews, or release him from ad-seg; (3) that Plaintiff's Fourteenth Amendment equal protection rights were violated because, among other reasons, other inmates who engaged in sexual activity were not PREA-designated nor were they kept in administrative segregation; and (4) that Defendants violated the Eighth Amendment by housing Plaintiff in unreasonably cold temperatures. (Dkt. 18.)

Defendants now seek dismissal of Plaintiff's Eighth Amendment Claims for failure to exhaust administrative remedies. (Dkt. 61.)

## 2. Standard of Law

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The *Jones v. Bock* Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. In addition, the *Jones v. Bock* Court cited with approval the observation that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Id.* at 219 (internal citation omitted).

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

**MEMORANDUM DECISION AND ORDER - 3**

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. 81, 103 (2006). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 85. Proper exhaustion is "defined not by the PLRA, but by the prison grievance system itself." *Jones v. Bock*, 549 U.S. at 218. Therefore, the "level of detail necessary in a grievance to comply with the grievance procedures" will be defined by the prison's own grievance policy. *Id*.

Failure to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has instructed that "pro se claims are construed liberally for purposes of the exhaustion requirement." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (immigration context) (relying on *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**MEMORANDUM DECISION AND ORDER - 4**

3.  **IDOC Grievance Policy**

A prisoner held in custody of the Idaho Department of Correction (IDOC) must attempt to resolve any "problem or action" related to his incarceration using the prison's internal grievance system. (Exhibit A to Affidavit of Christina Kearney, Technical Records Specialist/Acting IMSI Grievance Coordinator, Standard Operating Procedure Control Number 316.02.01.001, Docket No. 61-2.) IDOC has a relatively straightforward three-step system, which requires the prisoner to submit an informal concern form describing the problem, file a formal grievance, and submit an appeal of any adverse decision. (Kearney Aff., ¶¶ 4-12.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (*Id*. at ¶¶ 4-5.) If the issue is not resolved, the prisoner must complete a grievance form, attach a copy of the concern form, and file the grievance within 30 days of the incident. (*Id*. at ¶ 6.) The "grievance coordinator" at the prison will route a properly-completed grievance to the appropriate staff member, who must respond within 10 days. (*Id*. at ¶ 9.)

After the staff member responds, the coordinator forwards the grievance to the "reviewing authority," who, after reviewing the prisoner's complaint and the staff member's response, issues a decision. (*Id*.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority." (*Id*. at ¶ 12.) The appellate authority has 14 days to issue a final decision, whereupon the grievance is routed back to the inmate, thus concluding the administrative review process. (*Id*. at ¶¶ 13-14.)

**MEMORANDUM DECISION AND ORDER - 5**

**4.     Discussion**

Defendants argue that the Eighth Amendment claim is subject to dismissal without prejudice because Plaintiff did not file any grievance related to inadequately-heated living quarters. (*Id.* at ¶ 18.) Of the 56 grievances Plaintiff submitted in the two years preceding the filing of the Complaint in this action (April 22, 2008, to April 22, 2010), none addressed temperatures in administrative segregation. (*Id.*)

Plaintiff argues that he filed a grievance regarding inadequate heating in his cell, but his grievance was returned to him because he had more than three pending grievances on other matters in the system. (Dkt. 67, citing Exhibits 1518, 1519.) Plaintiff also argues that he filed another grievance on the condition after May 14, 2006. (Dkt. 67, citing Exhibit 1507.)

Defendants do not disagree with Plaintiff's characterization of the facts, but argue that Plaintiff simply failed to follow the grievance procedure set forth by IDOC by attempting to maintain more than three pending grievances at one time. (Dkt. 73.) The Court disagrees, because the procedure effectively forecloses prisoners from filing legitimate grievances. Prisoners are required to file grievances within a certain number of days, or the grievances will not be accepted. Should a prisoner have four legitimate grievances at roughly the same time, he will be able to pursue only three, and whether he can file the fourth in time is wholly dependent upon whether prison officials process the other three before the time for the filing of the fourth grievance expires. Here, the prison has chosen to make the grievance system unavailable to any prisoner who already has three pending grievances. *See Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (If

prison officials have effectively prevented a prisoner from exhausting his complaints, or if the prison has a grievance system in theory but not in practice, then the failure to complete the system may be excused). Accordingly, Defendants' Motion for Partial Summary Dismissal will be denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants assert entitlement to summary judgment on all of Plaintiff's claims.

**1.     Standard of Law**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine dispute as to any *material* fact. "Material facts are those that may affect the outcome of the case." *See id.* at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the

**MEMORANDUM DECISION AND ORDER - 7**

record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and

**MEMORANDUM DECISION AND ORDER - 8**

supporting materials– including the facts considered undisputed–show that the movant is entitled to it."

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To maintain a claim under § 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

2.     **Official Capacity Claims**

The United States Supreme Court has determined that the Eleventh Amendment generally prohibits litigants from bring suits against states, state agencies, and state officials acting in their official capacity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993). Therefore, Plaintiff's claims against Defendants in their official capacity can be maintained for the remedy of prospective injunctive relief only. *Ex parte Young*, 209 U.S. 123 (1908). However, an inmate's transfer or release from prison renders his injunctive relief claims moot. *See Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985); *Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995).

Here, Plaintiff has been released from prison. Therefore, any official capacity claims for prospective injunctive relief are moot, and Defendants are entitled to summary judgment on any such claims.

### 3. Res Judicata and Collateral Estoppel (Issue and Claim Preclusion)

In their Supplemental Briefing in Support of the Motion for Summary Judgment, Defendants argue that Plaintiff's claims (other than the Eighth Amendment claim) are barred by the doctrines of claim and issue preclusion, based on Plaintiff's prior state civil rights action on the same subject matter. (Dkt. 76.) These defenses were first raised in Defendants' Answer (Dkt. 32, p. 5), and are more fully briefed in their Supplement. (Dkt. 76.) Plaintiff has not responded to the Supplemental Briefing, although the Court set out a schedule for doing so. (Dkt. 75.) Accordingly, the Court considers Defendants' factual assertions supporting the supplemental Motion for Summary Judgment undisputed. *See* Local Rule 7.1(e)(2).

#### A. *Background*

Plaintiff previously filed and pursued to a conclusion on the merits a civil rights complaint in the Second Judicial District Court, in Clearwater County, Idaho. The case was entitled *O-Kel-ly v. Jones, et al.* (*O-Kel-ly I*) (Affidavit of Attorney Megan Goicoechea, Exhibit A, Dkt. 76-1.) The complaint was filed on April 16, 2009, and the case was eventually changed to an Ada County venue, where Judge Richard D. Greenwood presided over the matter (*Id.*)

In an amended complaint filed in that action, Plaintiff alleged that, while in custody of the IDOC, he was improperly classified as a sexual predator and wrongfully placed and kept in administrative segregation for over three years. (Goicoechea Affidavit, Exhibit C, p. 5, Dkt. 76-2.) He alleged violations of the First Amendment, the Due Process Clause, and the Equal Protection Clause. (*Id.*, Exhibit B.)

**MEMORANDUM DECISION AND ORDER - 10**

The case terminated when Judge Greenwood granted summary judgment to Defendants on, among other claims, Plaintiff's claim that his procedural due process rights were violated by being placed in long-term administrative segregation. Judge Greenwood found that Plaintiff was not deprived of a liberty interest such that due process protections were required. (*Id.*, Exhibit D.) Judgment was entered on July 1, 2011, dismissing Plaintiff's case. (*Id.*, Exhibit E.)

### B.   *Applicability Between State and Federal Courts*

Claim preclusion and issue preclusion prevent parties and their privies from bringing or having to defend a claim or re-litigate an issue arising from the transaction that gave rise to the first suit. Both claim and issue preclusion are affirmative defenses that may be asserted in federal courts, regardless of where the original facts were tried, including, as is the case here, state courts. *See* 28 U.S.C. § 1738 (federal courts must afford full faith and credit to state judicial proceedings); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984) (federal courts hearing § 1983 actions must give *res judicata* preclusive effect to state court judgments); *Allen v. McCurry*, 449 U.S. 90 (1980) (federal courts hearing § 1983 actions must give *collateral estoppel* preclusive effect to state court judgments). To determine whether a state court case should have preclusive effect on a federal action, federal courts apply the state's rules governing preclusion. *See Migra*, 465 U.S. at 83-85.

### C.   *Claim Preclusion*

Idaho law provides that the party asserting claim preclusion as an affirmative defense bears the burden of establishing all of its essential elements by a preponderance

**MEMORANDUM DECISION AND ORDER - 11**

of the evidence. *Foster v. City of St. Anthony*, 841 P.2d 413, 420 (Idaho 1992). For claim preclusion to bar a subsequent action there are three requirements: (1) the same parties or privies; (2) the same claim; and (3) a final judgment. *Ticor Title Co. v. Stanion*, 157 P.3d 613 (Idaho 2007) (citing *Hindmarsh v. Mock*, 57 P.3d 803,10-263 805 (Idaho 2002)); *Farmers Nat'l Bank v. Shirey*, 878 P.2d 762, 767 (1994)).

Idaho has adopted the "transactional" approach to claim preclusion, which means that, "[i]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit." *Weldon v. Bonner County Tax Coalition*, 855 P.2d 868, 872 (Idaho 1993), *overruled on other grounds, City of Boise City v. Keep the Commandments Coalition*, 141 P.3d 1123 (Idaho 2006). Accordingly, "[t]he finality of judgment element does not require that the precise point or question in the present action be finally resolved in the prior proceeding." *Ticor Title*, 157 P.3d at 126 (citing *Shirey*, 878 P.2d at 769).

### D.  *Discussion*

The "Memorandum Decision re: Cross Motions for Summary Judgment" entered by Judge Greenwood in *O-Kel-ly I* determined:

> Procedural due process was not violated when Plaintiff was placed in long-term administrative segregation in this case. The determination was made for the purposes of institutional security, safety, and welfare of the inmates. Long-term administrate segregation is well within the bounds of a prisoner's conviction and nothing in this record indicates that the conditions of the segregation imposed an atypical or significant hardship on Plaintiff. Thus, Plaintiff had no liberty interest in remaining free from administrative segregation. Plaintiff's claim for procedural due process violations relating

**MEMORANDUM DECISION AND ORDER - 12**

to his placement in long-term administrative segregation is dismissed.

(Dkt. 76-2, p. 52.)

Based on this order, the Court agrees with Defendants that claim preclusion applies to bar Plaintiff's due process, equal protection, and retaliation claims against Defendants who were named in both actions (Blades, Greenland, Johnson, Jones, Pfeifer, Reinke, Smith, Zmuda, and Henry), because the three elements of claim preclusion are met. Though the decision speaks only of the due process claim, the equal protection claim and retaliation claim that Plaintiff brought, were resolved with the entry of judgment in that case, under Idaho's transactional approach to res judicata.

However, the Court disagrees with Defendants that those persons *not* named as defendants in *O-Kel-ly I* but named in *O-Kel-ly II* are "in privity" with "the Idaho Department of Correction" to permit them to take advantage of claim preclusion. "To be privies, a person not a party to the former action must "derive[ ] his interest from one who was a party to it, that is, ... he [must be] in privity with a party to that judgment." *Ticor*, 157 P.3d at 124 (internal citations omitted). Even if this theory can be supported in law, the Idaho Department of Correction was not a defendant in *O-Kel-ly I*. In addition, the Court has found no Idaho case law to support the theory that coworkers can derive their interest from one another to meet the "privity" requirement.

As to the remaining Defendants in *O-Kel-ly II* (Sonnen, Reinke, Lyons, Link, Heinrich, Nichols, Aiello, Overgaard, and Vehling), it is clear that issue preclusion prevents Plaintiff from relitigating some of the issues finally decided on the merits in *O-Kel-ly I* that address central elements of Plaintiff's due process, equal protection, and

**MEMORANDUM DECISION AND ORDER - 13**

retaliation causes of action in *O-Kel-ly II*. Particularly, the state court determined that "[p]rocedural due process was not violated when Plaintiff was placed in long-term administrative segregation in this case," because "*[t]he determination was made for the purposes of institutional security, safety, and welfare of the inmates*." (Dkt. 76-2, p. 52 (emphasis added).) The state court further determined that "nothing in the record indicates that the conditions of the segregation imposed an atypical or significant hardship on Plaintiff." (Dkt. 76-2, p. 52.)

With these issues resolved by *O-Kel-ly I*, Plaintiff cannot show that (1) he can meet the threshold issue for a due process claim–whether his conditions were atypical or significant hardships, such that a due process claim arose; (2) that he can meet the element of an equal protection argument that his continued placement in administrative segregation was arbitrary and capricious rather than reasonably related to a legitimate penological interest;[2] or (3) that he can meet the element of a retaliation claim that the acts of Defendants were not in furtherance of a legitimate penological interest.[3]

Because the findings of the state court prevent Plaintiff from being able to meet the

---

[2] The United States Court of Appeals for the Ninth Circuit has explained: "In the prison context . . . even fundamental rights such as the right to equal protection are judged by a standard of reasonableness – specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Even where similarly-situated individuals are treated differently, state action is presumed constitutional and "will not be set aside if any set of facts reasonably may be conceived to justify it." *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993). Absent evidence of invidious discrimination, federal courts should defer to the judgment of prison officials. *Id.* at 272.

[3] One of the elements of a retaliation claim is that the action of prison officials did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 14**

essential elements of his claims in this action, Defendants are entitled to summary judgment on the due process, equal protection, and retaliation claims.

 8.     **Eighth Amendment Claims**

Plaintiff was permitted to proceed on his Eighth Amendment claim that his cell was inadequately heated, arising from the time period within the statute of limitations period of May 24, 2008, to October 1, 2010. In their Motion for Summary Judgment, Defendants assert that Plaintiff has failed to show that he has adequate evidence that supports the elements of an Eighth Amendment claim for prison conditions that amount to cruel and unusual punishment.

   A.     *Standard of Law*

To state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). A plaintiff must also show that Defendants were deliberately indifferent to the plaintiff's needs. Deliberate indifference exists when an official knows of and disregards an unconstitutional condition or when the official is aware of facts from which the inference could be drawn that a risk of harm or violation exists, and actually draws the inference. *Farmer v. Brennan,* 511 U.S. at 837.

**B.**     *Discussion*

The record reflects the following. In Plaintiff's Amended Complaint, he alleges that "[c]ompared to my general population cell at ICIO which was adequately heated, I am now subjected to uncomfortable cold temperature and conditions due to inadequate hearing which has and continues to inflict physical pain upon me due to my arthritis (degenerative disc disease in my neck) which cause[s] me severe muscular tightness, muscle pain and migraines. These conditions are worsened by defendants refusing to issue me undergarments and a[n] extra blanket to keep me warm." (Dkt. 15-1, ¶¶ 114-115.) Plaintiff clarified in his deposition that he wore a neck scarf and thermals to stay warm. (Dkt. 76-3, p. 16.)

The remainder of the record addressing the inadequate heating issue is a series of Offender Concern Forms and Grievances regarding inadequate cell temperatures submitted by Plaintiff in response to the Motion for Summary Judgment. Plaintiff provided an Offender Concern form dated October 28, 2009, when he complained of cold cell temperatures. The Response on October 30, 2009, was "Today Maintenance came to your cell and checked the temperature inside the cell. The temperature of your cell was 67° and the air coming out of your vent is 70°. Due to you covering your vent slightly you are not allowing proper air flow to your cell." (Dkt. 68-2, p. 2.) Plaintiff next filed a Grievance stating that Maintenance agreed to turn up the temperature, and yet his cell still remained too cold for him. (Dkt. 68-2, p. 4.) The Grievance was returned because Plaintiff already had three other pending grievances in the system. (Dkt. 68-2, p. 5.)

On November 23, 2009, Plaintiff submitted another Offender Grievance Form

**MEMORANDUM DECISION AND ORDER - 16**

complaining of inadequate temperatures, stating that the window frame was improperly insulated, and that his degenerative arthritis was bothering him as a result of the cold. The response on December 1, 2009, was: "Put in a Health Services Request Form for medical assistance and possible memo. The cells are at appropriate temp." (Dkt. 68-2, p. 6.)

Plaintiff sent in a third Offender Concern Form on December 14, 2009, complaining that the heat was inadequate. The response of December 15, 2009, was that Plaintiff should notify the staff for a temperature reading. (Dkt. 68-2, p. 7.)

About a year later, Plaintiff sent in a Offender Concern Form on December 27, 2010, to complain of cold cell temperatures. The reply of December 27, 2010, was: "Forwarded to Warden Blades on 12-27-10. Maintenance reports that they have checked the cells and they are at 70° on the average. Any other consideration should come through you[r] unit manager/sergeant." (Dkt. 68-2, p. 8.)

One day later, Plaintiff sent in an Offender Concern Form, complaining that his cell had been cold for the past two to three months. On December 30, 2010, the response was: "The heat was turned up on Dec. 29, 2010 to account for the cold weather." (Dkt. 68-2, p. 9.)

Plaintiff had no complaints of inadequate hearing until March 18, 2011, when Plaintiff complained: "For around a week my cell as well as others have been extremely cold due to inadequate heating." Plaintiff was instructed to notify the unit staff if the problem persisted and to submit a Health Services Request form for his medical issues. (Dkt. 68-2, p. 10.)

The foregoing series of correspondence between prison staff and Plaintiff show

**MEMORANDUM DECISION AND ORDER - 17**

that staff were consistently responsive to Plaintiff's requests to determine whether the temperature was in a range that could be considered cruel and unusual. Plaintiff has brought forward nothing showing that temperatures within 67 to 70° are not within the range of comfortable indoor temperatures during the winter, or that, in actuality, his cell temperature was not 67 to 70°. Staff suggested that, if Plaintiff had medical issues that made the regular temperatures unbearable, he should contact the medical unit for additional help. At some point in time, Plaintiff received additional winter garments to aid his condition, as he noted in his deposition.

The Court concludes that Plaintiff has failed to bring forward sufficient evidence to show that he was housed in conditions posing a substantial risk of serious harm or that he was deprived of the minimal civilized measure of life's necessities. In addition, he has failed to bring forward evidence to show that Defendants were deliberately indifferent to his complaints. Rather, the record shows that they responded to Plaintiff's complaints in a timely and appropriate manner, including sending Maintenance to check the temperatures several times, suggesting that Plaintiff not block his heat vent, suggesting that Plaintiff contact the medical unit for a "memo" or other aid for his particular health conditions, and turning up the heat on several occasions.

Plaintiff has not shown that Defendants knew of and disregarded an unconstitutional condition or that Defendants were aware of facts from which the inference could be drawn that a risk of harm or violation existed, and actually drew the inference. *Farmer v. Brennan,* 511 U.S. at 837. Accordingly, because Plaintiff has failed to bring forward sufficient evidence on which the jury could reasonably find for him on

his Eighth Amendment claim against Defendants, *see Anderson*, 477 U.S. at 252, they are entitled to summary judgment.

## ORDER

**IT IS ORDERED:**

1. Defendants' Partial Motion to Dismiss (Dkt. 61) is DENIED.

2. Defendants' Motion for Summary Judgment (Dkt. 62) is GRANTED.

3. Plaintiffs' Motion in Opposition to Defendants' Motion for Summary Judgment (Dkt. 70) is DENIED.

4. Plaintiff's entire case is DISMISSED with prejudice.

DATED: September 7, 2012

Honorable Mikel H. Williams
United States Magistrate Judge